UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM S. KAPLAN and DANIEL E. KAPLAN,<br><br>Petitioners,<br><br>v.<br><br>MERRILL LYNCH LYNCH, PIERCE, FENNER & SMITH INC.,<br><br>Respondent. | **OPINION AND ORDER**<br><br>22 Civ. 1333 (ER) |

Ramos, D.J.:

Adam S. Kaplan and Daniel E. Kaplan (the "Kaplans") petition the Court to vacate an arbitration award rendered against them by the Financial Industry Regulatory Authority ("FINRA") and in favor of Respondent Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). *See* Docs. 1, 4, 29. Merrill Lynch moves to dismiss the petition because the Court lacks jurisdiction and because the petition is untimely. *See* Doc. 22. For the reasons set forth below, Merrill Lynch's motion is GRANTED.

**I.   BACKGROUND**

The Kaplans served a statement of claim on March 25, 2019, and an amended statement of claim on June 20, 2019, seeking expungement of allegedly retaliatory, defamatory, and false statements made by Merrill Lynch about the Kaplans on Form U5 Uniform Termination Notices, which Merrill Lynch filed with FINRA on April 5, 2018. ¶ 2.[1] Following a two-day hearing held on October 27 and 28, 2021, a three-person panel of FINRA Dispute Resolution Services

---

[1] Unless otherwise noted, citations to "¶" refer to the Amended Petition to Vacate the Arbitration Award, Doc. 29.

arbitrators rendered an award in favor of Merrill Lynch, and against the Kaplans. ¶ 3. The award was served on the Kaplans on November 16, 2021. *Id.*

On February 16, 2022, the Kaplans filed a petition in this Court to vacate the award. *See* Doc. 1. Later that day, counsel for the Kaplans—Priya Chaudhry[2]—emailed a copy of the petition to Kenneth Turnbull—who had appeared on behalf of Merrill Lynch in the arbitration. *See* Doc. 35, Transcript of Pre-Motion Conference, 8:4–14. In that email, Chaudhry asked Turnbull whether he would accept service via email.[3] *Id.*

The next day, February 17, 2022, Chaudhry sent a paralegal—Vincenza Belletti—to attempt to serve both Turnbull and Merrill Lynch in person. *Id.* Belletti alleges she was denied entry both to Turnbull's law firm and to Merrill Lynch's offices, and so was unable to personally serve either. Doc. 32 ¶¶ 2–5. As a result, Belletti, on that same day, served the petition by mail, via the United States Postal Service. *Id.* at ¶ 6. On February 22, 2022, Turnbull replied to Chaudhry's email, advising her that he would not accept service via email. Doc. 30 at 7. Ultimately, on February 24, 2022, Chaudhry served the petition on Merrill Lynch via a process server. *See* Docs. 23-1; 23-2.[4]

On April 29, 2022, Merrill Lynch moved to dismiss the lawsuit for two reasons: first, because the Court lacks jurisdiction over the petition and, second, because the petition was not served within the time period prescribed by the Federal Arbitration Act, 9 U.S.C. § 12 (the "FAA"). *See* Doc. 21.

## II.     LEGAL STANDARD

---

[2] Chaudhry is counsel for the Kaplans for the purpose of the petition to vacate, but did not represent them in the arbitration. Tr. at 9:24–10:3.

[3] Chaudhry reports that she wrote: "Should I send somebody or will you accept this by email?" Tr. at 8:9–10.

[4] The Clerk of Court issued the summons on February 17, 2022. *See* Doc. 7.

### a. Jurisdiction

The FAA authorizes a party to an arbitration agreement to seek several kinds of assistance from a federal court, including confirmation or vacatur of an arbitral award. But the FAA's authorization of a petition does not itself create jurisdiction. *Badgerow v. Walters*, 142 S.Ct. 1310, 1314 (2022). Rather, a federal court must have an "independent jurisdictional basis" to resolve the matter. *Id.* (quoting *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). In other words, an applicant seeking to vacate an arbitral award under Section 10 of the FAA must identify a grant of jurisdiction, apart from Section 10 itself, conferring access to a federal forum. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009). If it is clear from the face of the application that the parties are citizens of different states and there is over $75,000 in dispute, then 28 U.S.C. § 1332(a) gives the court diversity jurisdiction. Or if the application alleges that federal law entitles the applicant to relief, then 28 U.S.C. § 1331 gives the court federal-question jurisdiction. If an applicant cannot identify either independent jurisdictional basis, the action must be dismissed.

### b. Timeliness

Under the FAA, "[n]otice of a motion to vacate . . . an [arbitral] award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Section 12 contains "[n]o exception" to the three-months limitation period. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984). As such, "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three-month period has run." *Id.* Beyond this, where "the adverse party is a resident of the district in which the award was made," service is to be made "as prescribed by law for service of notice of motion in an action in the same court." 9 U.S.C. § 12.

Here, the "adverse party"—Merrill Lynch—is a resident of New York for these purposes, and the petition to vacate was filed in the United States District Court for the Southern District of New York. Hence, the applicable law is Federal Rule of Civil Procedure 5, which governs the serving and filing of pleadings and other papers in this district. As relevant to the instant case, subsection (b)(2)(E) provides that

> A paper is served under this rule by . . . sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing . . .

Fed. R. Civ. P. 5(b)(2)(E). In other words, pursuant to Rule 5, a party may serve papers by email only if the person being served has "consented" to service by email "in writing." *Id.* Otherwise, personal service is required.

### III. DISCUSSION

#### a. Jurisdiction

This Court does not have jurisdiction over the Kaplans' petition to vacate. The parties agree that the FAA itself does not create a basis for federal jurisdiction. *See* Doc. 22 at 8; Doc. 30 at 17. In light of this, the Kaplans argue the Court nonetheless has diversity jurisdiction pursuant to § 1332(a). There is no dispute that the parties are diverse: the Kaplans are citizens of Florida and Merrill Lynch is a citizen of New York. ¶ 19. But the Kaplans' sole allegation relating to the amount in controversy—which must exceed $75,000—is conclusory. *See* ¶ 19 ("the amount in controversy exceeds the sum or value of $75,000"). The Kaplans do not name a specific dollar amount, nor do they argue that the relief they seek—expungement of U5 Forms— has anything to do with monetary damages. Indeed, in the underlying arbitration, the parties

entered into a stipulation barring any financial recovery.[5] *See* Doc. 5-7.  Because there is no amount in controversy at issue in the underlying arbitration, the Kaplans have failed to allege diversity jurisdiction, and their petition to vacate must be dismissed.[6]

### b. Timeliness

Even if this Court did have jurisdiction over the Kaplans' petition, it would nonetheless be dismissed as untimely.  The arbitration award was issued on November 16, 2021.  The Kaplans thus had until February 16, 2022, to properly serve notice of any motion or petition to vacate the award.  9 U.S.C. § 12.  That day—the last day that service could be made under the FAA—Chaudhry emailed Turnbull and asked him whether he would accept service via email, and she attached a copy of the petition to the email.  In other words, Chaudhry waited until the last possible day to ask Turnbull for his consent to receive service by email.  Prior to February 16, neither Turnbull nor Merrill Lynch had provided consent to email service in writing, as required by Rule 5.  By the time Chaudhry attempted other means of service—in person and by mail on February 17 and via a process server on February 24—the FAA's strict three-months limitations period had run.  As a result, the Kaplans did not timely serve notice of their petition to vacate.

---

[5] Specifically, the parties agreed that the "Kaplans will not argue at the hearing that the Kaplans have suffered damages (including any economic damages) from their terminations or from Merrill Lynch's responses on their Forms U5," and that the Kaplans waive any claims for damages under any theory[.]" Doc. 5-7 at 3–4.

[6] On June 6, 2022, the Kaplans requested leave to file a sur-reply to Merrill Lynch's motion to dismiss.  In that letter, the Kaplans write that while there is no request for damages in the underlying arbitration, they plan to seek a new arbitration hearing "at which they could and would demand an amount that would greatly exceed [] $75,000[.]"  *See* Doc. 39 at 2.  That the Kaplans might seek more than $75,000 in a future arbitration does not change the fact that in *this* arbitration, the Kaplans explicitly waived any damages.  And the Kaplans ask that the Court consider—and vacate—the underlying arbitration, not some future arbitration.

The Kaplans argue that Chaudhry's email *did* constitute proper service for purposes of the FAA. Specifically, the Kaplans point out that Merrill Lynch had designated email as its method of service in the FINRA proceedings and, from this, they argue that Merrill Lynch's consent to email service for purposes of its petition to vacate—filed in this district and not, as was their demand for arbitration, with FINRA—can be inferred. In other words, the Kaplans argue that Merrill Lynch's agreement to accept papers by email in the arbitration proceedings extends to service of motion papers in this court to vacate the arbitration award. But the Second Circuit has expressly rejected this argument. *See Dalla-Longa v. Magnetar Capital LLC*, 33 F.4th 693, 696 (2d Cir. 2022).

In *Dalla-Longa*, the Second Circuit affirmed a district court's dismissal of a petition to vacate an arbitration award. In that case, an arbitration panel issued a final award denying the petitioner's claims on September 9, 2019. *Id.* at 695. Exactly three months later, on December 9, 2019, petitioner filed a petition to vacate the award in federal district court and emailed a copy of that petition to respondent's counsel in the arbitration. *Id.* The Second Circuit noted that petitioner's counsel had not asked respondent or its counsel to consent to email service, nor had respondent or its counsel consented to service by email. *Id.* Respondent moved to dismiss the petition on the ground that it was not timely served. *Id.* The district court granted the motion, concluding that petitioner "failed to serve proper notice of the Petition within three months of the date the arbitration was delivered." *Dalla-Longa v. Magnetar Capital LLC*, 19 Civ. 11246 (LGS), 2020 WL 4504901, at *1 (S.D.N.Y. Aug. 4, 2020). Because respondent "did not consent in writing to service by email," the court found, petitioner's "service of notice of the Petition was improper under Rule 5." *Id.* On appeal, the Second Circuit affirmed. *Dalla-Longa*, 33 F.4th at 694.

In *Dalla-Longa*—as here—petitioner argued that respondent's agreement to accept papers by email in the arbitration proceedings applied to service of motion papers in the district court. But, as the Second Circuit made explicit, the parties' agreement to email service in the arbitration—assuming they made such an agreement—"did not constitute [respondent's] written consent to service of papers by email in a subsequent lawsuit brought in federal court to vacate an arbitration award." *Dalla-Longa*, 33 F.4th at 696. As the Second Circuit continued, "[a]bsent that written consent, [petitioner's] email did not effect service under Federal Rule of Civil Procedure 5, and he thus failed to serve notice of the petition within the FAA's strict three-month limitations period." *Id.*

The same is true here. That Merrill Lynch consented to email service in the FINRA arbitration does not mean that it or its counsel also consented to email service of a subsequent petition brought in federal court. And, indeed, that Chaudhry asked Turnbull whether he would consent to email service of the petition indicates that she understood this. If she knew that he *had* consented to email service, she would not have needed to ask. In other words, that Chaudhry asked for Turnbull's consent to email service belies her central argument: that Turnbull and Merrill Lynch had already or impliedly consented to email service of the petition to vacate in federal court when they consented to email service in the arbitration.

The Kaplans had three months to effect service of the petition to vacate. During that time, they failed to obtain Merrill Lynch's written consent to email service. Accordingly, as the Kaplans failed to serve their petition to vacate within the FAA's three-month limitations period,

their petition is untimely and must be dismissed with prejudice.[7] The Kaplans' motion for additional discovery is denied as moot.

IV.   CONCLUSION

For the reasons set forth above, Merrill Lynch's motion to dismiss the Kaplans' petition to vacate is GRANTED, and the Kaplans' motion for discovery is DENIED. The Kaplans' request for leave to file a sur-reply is also DENIED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 4, 21, 27, and 39, and to close the case.

It is SO ORDERED.

Dated:   June 10, 2022
         New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[7] In their letter requesting leave to file a sur-reply, the Kaplans also put forth two additional arguments. First, they argue that in *Dalla-Longa*, the Second Circuit left open the possibility that there might be an equitable exception to the FAA's three-month deadline. *See* Doc. 39 at 2–3. This argument is beside the point, as the Kaplans do not provide a basis for an equitable exception. Second, the Kaplans point to the fact that the Second Circuit ruled in *Dalla-Longa* that the Federal Rules of Civil Procedure control the service of petitions in cases like this one. On this point, they write that under the Federal Rules, proper service requires a summons which, in this case, could only have been accomplished on February 17, after the Clerk of Court issued the summons. *See supra* Note 4. This argument is also beside the point: the Kaplans had the burden of serving the petition on Merrill Lynch by February 16, 2022. If they wanted to do this via personal service, they should not have waited until February 16 to request an issuance of summons (knowing that it would not be issued until the following day).

The Court has considered the arguments set forth in the Kaplans' letter, *see supra* Note 6; as none of these alters the Court's analysis, the Kaplans' request for leave to file a sur-reply is denied.